7578

POLLARD v. FOUNTAIN INN OIL CO.

MASTER AND SERVANT—NEGLIGENCE—PROXIMATE CAUSE.—Where a servant in charge of machinery, informed as to its condition, undertakes to repair the machinery while running in a dangerous way, instead of in a safe way, at hand and apparent, not being instructed to do it in either way, and his clothing is caught by a setscrew on a revolving shaft, not negligently set, he assumes the risk of repairing the machinery in the dangerous way and his negligence is the proximate cause of the injury.

Before SHIPP, J., Greenville, March Term, 1909. Affirmed.

Action by Mollie E. Pollard, administratrix of Chas. Pollard, against Fountain Inn Oil Co. From judgment of nonsuit, plaintiff appeals.

*Messrs. Cothran, Dean & Cothran,* for appellant, cite: *Master is liabile for injury caused by unsafe machinery:* 70 S. C., 476; 60 S. C., 168; 61 S. C., 468; 25 S. C., 24; 72 S. C., 421; 74 S. C., 102; 107 U. S., 453; 35 At. R., 475. *Assumption of risks:* 80 S. C., 238. *Is for jury:* 74 S. C., 16; 72 S. C., 348; 42 S. C., 470; 66 S. C., 208; 81 S. C., 528; 81 S. C., 333; 163 Mo., 309; 72 S. C., 420.

*Messrs. Haynsworth, Blythe & Haynsworth,* contra, cite: *Injury from machinery does not raise presumption of negligence:* 75 S. C., 102; 69 S. C., 109; 70 S. C., 477. *No negligence of master is proximate cause of injury:* 67 S. C., 290; 21 S. C., 100; 58 S. C., 493; 61 S. C., 494. *Furnishing unguarded set-screw:* 33 N. E., 255; 47 S. E., 432; 15 N. E., 576; 13 C. C. A., 221; 29 Pac., 207; 45 N. E., 474; 48 N. E., 842; 86 N. W., 153; 114 N. W., 195; 27 Pac., 306; 56 N. E., 897; 21 N. W., 276; 84 C. C. A., 269; 16 C. C. A., 545; 117 N. W., 93; 75 S. C., 102. *On issue of negligence, how other gins placed set-screws, was competent:*

60 S. C., 168; 61 S. C., 488; 74 S. C., 234. *Failure to warn:*
55 S. C., 488. *Assumption of risks:* 80 S. C., 238; 64 S. C.,
215; 70 S. C., 242; 74 S. C., 419; 72 S. C., 237; 75 S. C.,
487; 15 N. E., 576; 73 N. E., 978; 36 N. E., 789; 39 N. E.,
787; 13 C. C. A., 221; 29 Pac., 207; 45 N. E., 474; 72 S. C.,
346. *Contributory negligence:* 80 S. C., 237; 86 C. C. A.,
551; 63 C. C. A., 32; 47 C. C. A., 664; 109 A. S. R., 887;
97 A. S. R., 454; 104 A. S. R., 454.

May 14, 1910. The opinion of the Court was delivered
by

MR. JUSTICE GARY. This is an appeal from an order of
nonsuit.

The facts are thus stated in the argument of the appel-
lant's attorneys:

"At the time of the accident, January 17, 1908, Charles
Pollard, a young man twenty-two years old, was employed
by the defendant, to attend to the linters and cotton gins,
in the defendant's oil mill and ginnery. On the morning of
that day he was directed to operate the gins, and when he
started at this work he discovered that the lacing of the belt
to one of the gins, which connected the pulley of the gin with
a pulley attached to the shafting on the ground floor, directly
underneath the gin, had been removed to supply a broken
lacing upon a belt in the oil mill. This belt had to be
repaired before the gin could be operated. At this time the
belt was hanging loose on the gin pulley, one end lying on
the floor of the ginnery and the other end on the ground
floor beneath, near the pulley which was attached to the
shafting which supplied the power. Two holes had been
cut in the ginnery floor, directly under the pulley on the
gin, through which the belt was intended to pass, and
through one of these holes the belt then was. To get the
two ends of the belting together for the purpose of lacing
it, as the end lying on the ground underneath could not be
reached and pulled up through the hole by one standing on

the ginnery floor, it became necessary for Pollard to descend to the ground floor, which he did by means of a set of steps near the middle of the building, the landing place of which was within a few feet of the pulley on the ground floor, and the way thereto free and unobstructed.  Pollard approached the belt, as it was hanging through the hole in.the floor above, in the most direct route, and on the side of the shafting upon which it was hanging; he called to one of his friends to push the other end of the belt through the other hole in the floor, that he might catch it, draw it underneath the shafting, relace it and adjust it to the pulley.  A post to which the shafting was attached was about eleven inches from the pulley, and in this space the belt was hanging. Between the pully and the post, in this eleven-inch space there was a 'collar' screwed to the shafting by two 'set-screws,' the heads of which projected above half an inch. The shafting was revolving at the time, which made the projecting set-screws practically invisible.  As Pollard reached over the shafting to catch the loose end of the belt hanging on the opposite side, his clothing was caught by the set-screws so projecting, and his body beat to death against the upright and overhead timbers."

At the close of the plaintiff's testimony, the defendant made a motion for a nonsuit, which was granted for the reasons therein set out.  Subsequently plaintiff's attorneys made a motion to set aside the order of nonsuit.  After hearing argument, his Honor, the Circuit Judge, was satisfied that the nonsuit should remain, and assigned the following reasons for his ruling:

"The plaintiff's testimony showed that the collar with the projecting set-screw such as defendant used, was an appliance almost universally used in ginneries.  One of the witnesses had known of one or two instances where ginneries had employed collars with set-screws let down into them, but he stated that these were the exceptions.  There was no

evidence tending to show that this kind of appliance would not be used by a master of ordinary prudence and foresight. The very reverse was shown. In addition, plaintiff's testimony showed that the collar and set-screw in question were at a point where it was impossible for the human body to pass. It was located between the pulley and a large post, to which the shafting was attached, in a space of about eleven inches. On the other side of this pulley there was a clear space of from three to four feet that was free from any danger, and where the work could have been as well done. Here, then, was a case where the deceased had two ways of doing the work in hand. One of them involved danger of contact with the set-screw, the other was free from danger. He chose the dangerous way, and assumed the risk involved.

"Furthermore, the evidence showed that the deceased was in charge of the ginnery; that the engineer was subject to his directions and control; it was in his power, therefore, to have stopped the machinery if he had deemed it necessary for his safety to do so. If, being free to stop the machinery, he elected to do the work while it was running, he must be taken to have assumed the risk. It is certain that the defendant had given him no directions to do the work while the machinery was running.

"The deceased had been at work in this ginnery for some two or three years, and for about one month had been in charge of the ginning establishment. He must be taken to have been aware of the presence of the collar and set-screw, located as they were in a well lighted room.

"On the whole, I conclude as follows: That there was no evidence of negligence on the part of the defendant, operating as a proximate cause of the death of the deceased; that the risk was one ordinarily incident to the employment in which the deceased was engaged; that the risk was plain and obvious to a man of ordinary observation, and was assumed by the deceased. That having a perfectly safe way to do

the work, he voluntarily selected a method involving danger to himself, and thereby assumed the risk."

For the reasons assigned by his Honor, the Circuit Judge, the order of nonsuit is affirmed.